OPINION *Page 2 
{¶ 1} Defendant-Appellant, Raymond J. Kirk, appeals the judgment of the Union County Court of Common Pleas, convicting him of one count of grand theft of a motor vehicle. On appeal, Kirk asserts that the trial court erred when it failed to grant him a hearing on his motions to dismiss; that the trial court violated his constitutional right to counsel when it failed to permit his trial counsel to withdraw and failed to grant his motion for new counsel; and, that the trial court abused its discretion when it scheduled his trial outside of the statutorily required speedy trial date in violation of his constitutional and statutory rights to a speedy trial. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} On October 9, 2005, the Village of Richwood Police Department in Union County arrested Kirk for grand theft of a motor vehicle.
 {¶ 3} On October 24, 2005, the Union County Grand Jury indicted Kirk on one count of grand theft of a motor vehicle in violation of R.C.2913.02(A)(1),(B)(5), a felony of the fourth degree, and one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree. Also on that date, the trial court sent an arrest warrant with a copy of the indictment to the Union County Sheriff. *Page 3 
 {¶ 4} On October 27, 2005, the Union County Sheriffs Office filed a Return of Executed Warrant form completed by the arresting officer, indicating that the officer received the warrant pursuant to the indictment on October 24, 2005, and gave Kirk a copy of the warrant with the indictment attached on October 25, 2005. Also on that date, the trial court conducted Kirk's arraignment by video conference while he was in the jail. The trial court read the indictment to Kirk during the proceeding, after which he pled not guilty to both counts of the indictment. Additionally, Kirk requested appointment of counsel, which the trial court granted, referring him to the Counsel for Indigents of Union County, (hereinafter referred to as "CIUC"), a division of the Union County Public Defender's Office.
 {¶ 5} On October 28, 2005, Kirk was released from jail upon his own recognizance under R.C. 2937.29 on the condition that he appear before the trial court as scheduled.
 {¶ 6} On November 3, 2005, CIUC determined that Kirk was indigent and assigned counsel to represent him.
 {¶ 7} On November 15, 2005, Kirk moved for a continuance of the scheduling conference, which the trial court granted. Subsequently, the scheduling conference was rescheduled for December 5, 2005. *Page 4 
 {¶ 8} On December 5, 2005, Kirk failed to appear at the scheduling conference and the trial court revoked his bond and issued a writ of capias for his arrest.
 {¶ 9} On February 22, 2006, Kirk was rearrested. Subsequently, the trial court scheduled Kirk's scheduling conference for March 16, 2006.
 {¶ 10} At the March 2006 scheduling conference, the trial court initially scheduled Kirk's trial for March 31, 2006, after which the following exchange occurred:
 [Kirk's Counsel]: Your Honor, that's the last day that I'm on my vacation. I'll still be in Florida on March 31st.
 The Court: So you're asking for a continuance?
 [Kirk's Counsel]: Yes, please, your Honor.
 The Court: Sure. Well, we'll set this then for — [Bailiff], give me a date in June or July that we still have open.
 Bailiff: Yes, sir.
 [Kirk]: Is that way past my 30 days or 90 days?
 [Kirk's Counsel]: Huh?
 [Kirk]: Is that way past my 90 days then?
 [Kirk's Counsel]: No. Because I (inaudible) on the 31st, so time after that doesn't count.
 [Kirk]: Well, so what am I going to waive my rights to a speedy trial then?
 The Court: In fact, if you don't find any there, go into August because they've just asked for a continuance.
 [Kirk's Counsel]: Unless you want to hire another attorney to do it on the 31st.
 [Kirk]: That's what I want to do. Yeah.
 [Kirk's Counsel]: You going to hire somebody then?
 [Kirk]: No. I'm gonna — no. I want different counsel. I'm not waiving my rights.
 [Kirk's Counsel]: They're not going to appoint somebody else. *Page 5 
 [Kirk]: Well, I'll represent myself then. I'm not waiving my rights.
 The Court: What's your problem, sir?
 [Kirk]: I don't wish to waive my rights for a speedy trial.
 The Court: Well, not a problem. I — I certainly didn't try to.
 [Kirk]: Well, I understand that. It's the first I heard of it right here, your Honor.
 The Court: Well, first that I've heard of it too.
 [Kirk]: Okay.
 The Court: But the other end of it is, you asked for — asked for and received a lawyer, a good one, for whatever it's worth.
 [Kirk]: Right.
 The Court: And he says I cannot try that. I've got to have some vacation time or I'm going to go right off the wall. That's what his trouble is. You want a good one, then you got one. And I'm trying to find you a date. So don't give me a bad time. I don't need that.
 [Kirk]: Your Honor, I'm not trying to do that. I just — I just — I don't wish to waive my rights to a speedy trial.
 The Court: I don't want you to waive your rights. Don't want you to. But — but you certainly don't want us to — to jump through hoops in order to and make him come back early from vacation. And for whatever it's worth, I certainly am not going to — I'm certainly not going to keep [him] from going on vacation, you know. If you were the only case we had, it'd be different. We don't. We have them day after day after day. What's the date?
 [Kirk]: So what do I do to, I mean.
 Bailiff: Judge, Wednesday, June 7th.
 [Kirk's Counsel]: You can hire an attorney. He'll try it the 31st.
 * * *
 [Kirk]: I can't hire an attorney. I can't afford one.
 The Court: This — Okay. June 7th?
 [State]: That's fine, your Honor.
 [Kirk's Counsel]: That's fine your Honor.
 The Court: Okay. 9:00 A.M. [Kirk] is remanded to the custody of the Sheriff of Union County. Time charged to [Kirk].
 [Kirk's Counsel]: Thank you, your Honor.
 [Kirk]: So you're saying I just waived my rights then, right? *Page 6 
 [Kirk's Counsel]: I am not being available at the time, yeah.
 (Inaudible).
 [Kirk]: So that would be (inaudible) there it would be nine months, a year on the trial?
 [Kirk's Counsel]: No. It's June 7th.
 [Kirk]: But as long as nobody else gets any other continuances?
 [Kirk's Counsel]: No. They won't.
 [Kirk]: Well, really that's-
 [Kirk's Counsel]: June 7th is your trial.
 * * *
 [Kirk]: What do I do about getting another attorney, your Honor?
 The Court: Any time you want to hire one, you are perfectly entitled to.
 [Kirk]: I'm indigent. I can't do that.
 The Court: Well, then-
 [Kirk]: I'm not — I'm not — I'm not happy with my counsel.
 The Court: Well then, you're not going to get another attorney because you get — you get one appointed to you. For whatever it's worth, it's the best we've got. Good man. And I just tell you that.
(Scheduling Hearing Tr., pp. 3-7).
 {¶ 11} On March 17, 2006, Kirk sent a letter to the Ohio Public Defender's
Office (hereinafter referred to as "the Office"). In the letter, Kirk expressed his
dissatisfaction with his counsel for waiving his right to a speedy trial, and with the
trial court judge for refusing to appoint new counsel. Additionally, Kirk alleged
that he and his counsel clashed prior to the scheduling conference; that his counsel
failed to inform him that he was going on vacation; that his counsel tried to coerce
him into entering into a plea agreement with the prosecution; that he did not wish
to waive his right to a speedy trial; that he was indigent; and, that neither his *Page 7 
counsel nor the trial court judge were interested in protecting his rights. Kirk also requested that the Office intervene and appoint new counsel. A copy of the letter was also sent to Kirk's counsel.
 {¶ 12} On March 26, 2006, the Office responded to Kirk's letter, informing him that it could not assist him because he already had current representation. The Office further informed Kirk that "the appointment of trial counsel to an indigent criminal defendant is a matter left solely to the discretion of the trial court, and this office has no authority to intervene in those decisions," and that he should either direct his concerns to the trial court judge or ask his counsel to withdraw. (Office Letter, p. 1).
 {¶ 13} On March 28, 2006, Kirk sent a letter directly to his counsel asking him to withdraw because he was dissatisfied with the waiver of his right to a speedy trial at the scheduling conference.
 {¶ 14} On April 6, 2006, Kirk's counsel faxed a response letter to Kirk, providing that, as Kirk was advised by the trial court judge, "a new attorney will not be appointed" and offering to "work together in preparing" for the upcoming trial. (Counsel's Correspondence, p. 1). Further, Kirk's counsel provided that he would be "unable to provide [Kirk] with the legal advice and counsel which [he] deserve[d] if [he was] unwilling to work with [him] in preparation of the defense." (Counsel's Correspondence, p. 1). *Page 8 
 {¶ 15} On April 7, 2006, Kirk filed a letter with the trial court, dated March 31, 2006, requesting that copies of the letter be placed in his file and given to the trial court judge. In the letter, Kirk noted his dissatisfaction with his counsel and with the trial court's refusal to replace his counsel during the scheduling hearing, stated that he was "formally asking" for appointment of new counsel, opined that, in jail, he did not have access to books on how to write a proper motion or to a typewriter on which to format such a motion, and requested a transcript of the scheduling hearing. (April 7, 2006 Letter, pp. 1-4).
 {¶ 16} On April 11, 2006, the trial court overruled Kirk's request for a transcript and also overruled his motion for new counsel, explaining that "this Court has already referred [Kirk] to [CIUC]. That entity assigns counsel and this Court (and judge) has nothing to do with who is assigned to [his] case." (April 11, 2006 Journal Entry, p. 1).
 {¶ 17} On April 13, 2006, Kirk sent his counsel another letter, asserting that he was dissatisfied with his counsel because his counsel only contacted him three times, had waived his right to a speedy trial against his wishes, and would not withdraw even though he asked his counsel to do so in his March 28, 2006 letter. Kirk further stated that he believed he had shown just cause to have new counsel appointed and was "making it a matter of public record" that he was dismissing his *Page 9 
counsel. (April 13, 2006 Letter, p. 6). Copies of the letter were also filed with the trial court and the prosecutor.
 {¶ 18} On April 25, 2006, Kirk filed another letter with the trial court, stating that the letter was a formal legal motion to dismiss his case based upon a violation of his right to a speedy trial. Additionally, Kirk reiterated his objections to the waiver of his speedy trial right at the March 16, 2006, scheduling conference, argued that he did not voluntarily waive his right to counsel, but yet was forced to represent himself due to conflict with his counsel, and asserted that the trial court denied his request for the scheduling conference transcript because the transcript substantiated his claims.
 {¶ 19} On May 1, 2006, the trial court overruled Kirk's motion to dismiss in a one-sentence journal entry.
 {¶ 20} On May 8, 2006, Kirk again filed a letter, asserting that it was a motion to reconsider the overruling of his motion to dismiss on the basis that the trial court failed to state the grounds upon which it overruled his April 25, 2006, motion to dismiss. Additionally, Kirk requested that his case be dismissed based on a violation of his right to a speedy trial.
 {¶ 21} On May 11, 2006, Kirk's counsel filed a motion to withdraw as counsel, acknowledging the numerous letters written by Kirk requesting new counsel and asserting that Kirk was not cooperating with his trial preparation. *Page 10 
Alternatively, Kirk's counsel requested that the trial court order Kirk to cooperate with him. Thereafter, the trial court issued a ruling, denying Kirk's counsel's motion to withdraw, stating that "[t]he court does not provide indigent counsel assignments, but simply refers indigent defendants to the corporation contracted to provide indigent counsel services for Union County. Whomever is assigned by the indigent corporation is not `assigned' by this court." (May 11, 2006 Journal Entry, p. 1). The trial court continued that, if CIUC did appoint new counsel, the trial would still proceed on June 7, 2006, as scheduled. Further, the trial court provided that it believed "that it would be poor policy to allow any defendant to replace an assigned counsel at defendant's whim, since once that policy is established, there is nothing to prevent a defendant to delay a case by making that demand. That would be contrary to the orderly disposition of pending criminal cases." (May 11, 2006 Journal Entry, p. 3).
 {¶ 22} On May 12, 2006, Kirk filed a letter with the trial court, asserting that the letter was a motion to dismiss based on a violation of his right to a speedy trial and a violation of the statute governing service of indictments. Regarding his indictment, Kirk alleged that he did not receive a copy one or more days before his arraignment as required by statute, but instead had been read the indictment during the video arraignment. Kirk also alleged that he did not receive a time-stamped copy of his indictment until May 9, 2006. Kirk also requested a hearing on the *Page 11 
matter and reiterated that he did not wish to waive his right to a speedy trial. The trial court never responded.
 {¶ 23} On May 18, 2006, Kirk sent a letter to CIUC requesting appointment of new counsel.
 {¶ 24} On May 21, 2006, CIUC responded that its "contract with Union County states that [it] will appoint attorneys to represent indigent defendants upon referral by the county courts. [CIUC has] done that in this case. Before [CIUC] could reappoint counsel, [it] would need another referral from the Court. The Court has refused to do that." (CIUC Letter, p. 1). CIUC further stated that Kirk's counsel was a "very competent defense counsel. The only issue here is that you have refused to speak with him in order to prepare your defense. Your refusal to speak with [counsel] does not create good cause to appoint a new attorney." (CIUC Letter, p. 1).
 {¶ 25} On May 22, 2006, Kirk filed a letter with the trial court asserting that he was amending his May 12, 2006, letter moving to dismiss. The purpose of the amendment was to allege a violation of Crim.R. 7(A), dealing with an accused's waiver of the right to an indictment.
 {¶ 26} On May 23, 2006, Kirk filed a letter with the trial court, again requesting a dismissal of his case based on improper service of his indictment and alleging that he was being unlawfully detained. The trial court never responded. *Page 12 
 {¶ 27} On May 24, 2006, Kirk filed a letter with the trial court addressed to the trial court judge, responding to the trial court's May 11, 2006, journal entry denying his counsel's motion to withdraw. Kirk indicated that he was forced to represent himself; that he did not trust his counsel's advice and would not accept it; and, that he was prepared to represent himself at the trial. The trial court never responded.
 {¶ 28} On May 31, 2006, Kirk filed three letters with the trial court, the first of which requested that the State forward to him any evidence or statements that it intended to use against him at the trial. The second letter requested that subpoenas be issued to listed witnesses. The final letter moved for an exclusion of former testimony under Evid.R. 804(1) and Evid.R. 403(A). The trial court never responded.
 {¶ 29} On June 2, 2006, the State filed a memorandum in response to Kirk's May 9, 2006, letter requesting dismissal, asserting that Kirk was properly served with his indictment and arraigned as required by statute. Additionally, the State requested that the trial court strike any pro se motions submitted by Kirk given he had representation. The trial court never responded.
 {¶ 30} On June 7, 2006, Kirk's case proceeded to trial, whereat a jury convicted him of the grand theft of a motor vehicle charge.[1] *Page 13 
 {¶ 31} On June 8, 2006, the trial court sentenced Kirk to a thirteen-month prison term with credit for time served, ordered him to pay a one-thousand dollar fine plus costs, and subjected him to up to three years of post-release control.
 {¶ 32} It is from this judgment that Kirk appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT AN (SIC.) HEARING ON HIS MOTIONS TO DISMISS.
 Assignment of Error No. II THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO COUNSEL WHEN IT FAILED TO PERMIT TRIAL COUNSEL TO WITHDRAW AND/OR GRANT APPELLANT'S MOTION FOR NEW COUNSEL BY REFERRING THE APPOINTMENT BACK TO THE UNION COUNTY PUBLIC DEFENDER'S COMMISSION FOR THE ASSIGNMENT OF NEW COUNSEL.
 Assignment of Error No. III THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SET APPELLANT'S TRIAL SO FAR OUT, WHICH CAUSED HIS TRIAL TO FALL OUTSIDE APPELLANT'S SPEEDY TRIAL TIME THEREBY VIOLATING BOTH HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO A SPEEDY TRIAL.
 {¶ 33} Due to the nature of Kirk's assignments of error, we elect to address the second and third assignments of error out of order. *Page 14 
 Assignment of Error No. I {¶ 34} In his first assignment of error, Kirk contends that the trial court erred by failing to hold a hearing on his motions to dismiss. Specifically, Kirk asserts that the trial court should have held a hearing on his motions to dismiss for failure to properly serve his indictment in violation of R.C. 2941.49 and Crim.R. 7(A). We disagree.
 {¶ 35} R.C. 2941.49 governs service of an indictment upon an accused, providing:
 Within three days after the filing of an indictment for felony * * *, the clerk of the court of common pleas shall make and deliver to the sheriff, defendant, or the defendant's counsel, a copy of such indictment. The sheriff, on receiving such copy, shall serve it on the defendant. A defendant, without his assent, shall not be arraigned or called on to answer an indictment until one day has elapsed after receiving or having an opportunity to receive in person or by counsel, a copy of such indictment.
 {¶ 36} Generally, any alleged defect in service of the indictment must be raised prior to trial or it is waived. State v. Turner, 8th Dist. No. 81449, 2003-Ohio-4933, ¶ 10, citing Goman v. Maxwell (1964),176 Ohio St. 236. See also, Crim.R. 12(C)(2) (defenses and objections based on defects in the indictment, other than failure to show jurisdiction or to charge an offense, must be made prior to trial). However, such a pre-trial motion "must be made within thirty-five days after arraignment or seven days before trial, whichever is earlier." Crim.R. 12(D). Failure to do so constitutes a waiver of the defenses or objections unless the court *Page 15 
decides to grant relief from the waiver upon a showing of good cause. Crim.R. 12(H).
 {¶ 37} In the case sub judice, Kirk did raise an objection based on an alleged defect in the service of his indictment prior to trial. However, Kirk did not object until his May 12, 2006 letter filed with the trial court, well outside the thirty-five day time period after his October 2005 arraignment. Thus, Kirk waived any objection to service of his indictment pursuant to Crim.R. 12(H). Therefore, we find that the trial court did not err in failing to hold a hearing on Kirk's objection to service of his indictment.
 {¶ 38} Moreover, a review of the record indicates that, contrary to Kirk's assertion that he was never served with the indictment, the indictment was issued on October 24, 2005, and the Return of Executed Warrant form completed by the arresting officer provided that Kirk received a copy of both the indictment and the warrant on the indictment on October 25, 2005. Kirk's arraignment was conducted on October 27, 2005, in compliance with the time requirements under R.C. 2941.49.
 {¶ 39} Accordingly, we overrule Kirk's first assignment of error.
 Assignment of Error No. III *Page 16 {¶ 40} In his third assignment of error, Kirk contends that the trial court abused its discretion and violated his statutory and constitutional right to a speedy trial by setting his trial date outside of the speedy trial deadline. We disagree.
 {¶ 41} Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq.State v. DePue (1994), 96 Ohio App.3d 513, 516; see also State v.West, 3rd Dist. No. 2-06-04, 2006-Ohio-5834; Cleveland v. SeventeenthStreet Ass'n, 8th Dist. No. 76106, 2000 WL 426553. If any ambiguity exists, we construe the record in favor of the accused. State v.Mays (1996), 108 Ohio App.3d 598, 609; State v. Mitchell (1991), 8th Dist. No. 76106, 1991 WL 106037.
 {¶ 42} The applicable statutory speedy trial provision, R.C.2945.71(C)(2), provides that a person against whom a felony charge is pending must be brought to trial within two-hundred seventy days after the person's arrest. Additionally, the triple-count statute, R.C.2945.71(E), provides that, for computation purposes, each day that an accused spends in jail in lieu of bond on the pending charge shall count as three days.
 {¶ 43} Further, R.C. 2945.73(B) provides:
 Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code. *Page 17 
R.C. 2945.71 and R.C. 2945.73 are "mandatory and must be strictly complied with by the state." State v. Pudlock (1975), 44 Ohio St.2d 104,105, citing State v. Gray (1964), 1 Ohio St.2d 21 and State v.Cross (1971), 26 Ohio St.2d 270. However, R.C. 2945.72 allows for an extension of the time that the accused must be brought to trial under certain circumstances.
 {¶ 44} In the case sub judice, Kirk argues that his June 7, 2006, trial date was outside of the two-hundred seventy day time limit under R.C. 2945.71(C)(2). In doing so, Kirk urges us to calculate his speedy trial time beginning with his initial arrest in October 2005, then tolling the running of the time between the December 2005 scheduling conference, at which he failed to appear, and his re-arrest in February 2006. We decline to do so based on our decision in State v. Gibson
(1992), 75 Ohio App.3d 388.
 {¶ 45} In Gibson, we held that a defendant who violated his bond and failed to appear for scheduling conference hearings set by the court waived his "`right to assert the provisions of R.C. 2945.71 through2945.73 for that period of time which elapse[d] from his initial arrest to the date he [was] subsequently rearrested.'" Id. at 392, quotingState v. Bauer (1980), 61 Ohio St.2d 83, 85 (alterations in original). The defendant, Gibson, was originally arrested in September 1990 for a fourth degree felony charge, and was subsequently released on a recognizance bond. Gibson's trial was initially scheduled for January 1991, *Page 18 
but was rescheduled for March 1991 due to motions filed by the defendant. Shortly before the March 1991 trial, Gibson's counsel withdrew, new counsel was appointed, and a scheduling conference was scheduled for the beginning of April 1991. Gibson failed to appear at the scheduling conference. The trial court rescheduled the scheduling conference for the following week, but Gibson again failed to appear. Consequently, the trial court revoked Gibson's bond and issued a capias writ for his arrest. Gibson was rearrested at the end of May 1991, and his trial was ultimately scheduled for the end of August 1991.
 {¶ 46} Prior to trial, Gibson moved for dismissal of his case based on alleged violations of his right to speedy trial, which the trial court denied. Subsequently, Gibson pled no contest and was found guilty and sentenced accordingly. On appeal to this Court, we held that Gibson's speedy trial time did not begin to run until the date of his rearrest in May 1991, rather than the date of his initial September 1990 arrest. In doing so, we relied on the Ohio Supreme Court's decision inBauer, which held that a defendant who failed to appear for trial waived the benefits of the speedy trial statutes for the period of time between his initial arrest and his subsequent rearrest because "through his own design he chose to shun this right and impede the prompt administration of this cause." Bauer, 61 Ohio St.2d at 84. *Page 19 
 {¶ 47} Additionally, the Bauer Court rejected the defendant's assertion that his failure to appear at trial merely tolled the running of the speedy trial statute from the initial trial date to his rearrest, finding that argument to be "unworkable and inconsistent with the efficient administration of justice." Id. at 85. Instead, the Court recalculated the defendant's speedy trial time from the date of his rearrest to his trial date, taking into consideration the triple-count provision under R.C. 2945.71(E), and concluding that the defendant's speedy trial rights had not been violated.
 {¶ 48} Here, Kirk's failure to appear at the December 5, 2005, scheduling conference in violation of his bond was similar to that of the defendants' in Gibson and Bauer. The two and a half month delay between the December 5, 2005, scheduling conference and Kirk's rearrest on February 22, 2006, is solely attributable to Kirk's conduct. Thus, we find that Kirk waived his right to assert the applicable speedy trial statutes for the period that elapsed between the date of his initial arrest and the date of his subsequent rearrest, and that recalculation of his speedy trial time begins on February 22, 2006, when he was rearrested.
 {¶ 49} Using Kirk's rearrest date as the starting point to calculate speedy trial time, the record indicates that Kirk was in jail in lieu of bond from February 22, 2006, to the date of his trial on June 7, 2006. Application of the triple-count statute, R.C. 2945.71(E), to that time period reveals that three-hundred fifteen days *Page 20 
elapsed, from Kirk's rearrest to his trial, (105 calendar days x 3), which is outside the two-hundred seventy day time period required under R.C. 2945.71(C)(2). Thus, absent an allowable extension under R.C.2945.72, Kirk's right to a speedy trial appears to have been violated.
 {¶ 50} Two extensions, R.C. 2945.72(E) and R.C. 2945.72(H), are pertinent to the facts before us. R.C. 2945.72(E) allows for an extension of time for speedy trial purposes for "any period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused."
 {¶ 51} Similarly, R.C. 2945.72(H) allows for an extension of time for speedy trial purposes during the "period of any continuance granted on the accused's own motion * * *." If an accused waives his right to a speedy trial, the waiver must be "expressed in writing or made in open court on the record" to be effective. State v. King (1994),70 Ohio St.3d 158, 161.
 {¶ 52} Here, Kirk's counsel requested a continuance in open court on the record at the March 16, 2006, scheduling conference due to his unavailability, which the trial court granted. Under R.C. 2945.72(H), the continuance constituted a waiver of Kirk's speedy trial right and tolled the time period between the continuance and his trial. Although Kirk asserts that his lack of consent to the continuance invalidates any waiver of his speedy trial right, "a defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived *Page 21 
by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." State v. McBreen (1978), 54 Ohio St.2d 315, 320. Thus, from February 22, 2006, to March 16, 2006, only sixty-six days, (22 calendar days x 3), elapsed for speedy trial purposes under the triple-count statute, well within the requisite two-hundred seventy day time period mandated under 2945.71(C)(2).
 {¶ 53} Moreover, even if we considered Kirk's objections to the continuance at the scheduling conference as a withdrawal of the continuance, the extension under R.C. 2945.72(E) applies to toll the running of speedy trial time for each motion he filed with the trial court thereafter. Thus, applying the triple-count statute, one-hundred thirty-two days, (44 calendar days x 3), elapsed from Kirk's rearrest on February 22, 2006, to the filing of his first motion on April 7, 2006, requesting appointment of new counsel. At that point, Kirk's speedy trial time was tolled from April 7, 2006, to April 11, 2006, when the trial court issued its denial of his motion. Kirk's speedy trial time resumed running from April 11, 2006, until Kirk filed his motion to dismiss on April 25, 2006, for an additional forty-two days, (14 calendar days x 3).[2] Time was then tolled from April 25, 2006, until the trial court's May 1, 2006, denial of Kirk's motion to dismiss. *Page 22 
Between May 1, 2006, and Kirk's May 8, 2006 motion to dismiss, twenty-one additional days, (7 calendar days x 3), elapsed for speedy trial purposes. Time was then tolled from the filing of Kirk's May 8, 2006, motion to dismiss to the trial court's May 11, 2006, denial of it. Three days elapsed for speedy trial purposes from May 11, 2006, to May 12, 2006, (1 calendar day x 3), when Kirk filed another motion to dismiss. Time was again tolled from Kirk's May 12, 2006, motion to dismiss to the trial date, June 7, 2006, because the trial court did not rule on his May 12 motion prior to trial.[3] Therefore, the combined total of days that elapsed for speedy trial purposes was one-hundred ninety-eight days, (66 calendar days x 3), well within the requisite two-hundred seventy day period. Thus, we find that the trial court did not violate Kirk's rights to a speedy trial by scheduling the trial for June 7, 2006.
 {¶ 54} Accordingly, we overrule Kirk's third assignment of error.
 Assignment of Error No. II {¶ 55} In his second assignment of error, Kirk contends that the trial court violated his constitutional right to counsel by failing to permit his trial counsel to withdraw and/or by failing to grant his motion for new counsel by referring the appointment back to the CIUC for assignment of new counsel. Specifically, Kirk *Page 23 
asserts that there was a complete breakdown of communication, conflict of interest, or irreconcilable conflict between him and his counsel, as evidenced at the March 2006 scheduling conference and in his numerous letters filed with the trial court thereafter. Additionally, Kirk asserts that he was denied effective assistance of counsel by his counsel's failure to raise the issue of a violation of his speedy trial rights. We disagree.
 {¶ 56} Substitution of counsel is within the discretion of the trial court. Wheat v. U.S. (1988), 486 U.S. 153; State v. Jones,91 Ohio St.3d 335, 343-44, 2001-Ohio-57. Thus, we review the trial court's decision under the abuse of discretion standard. State v. Murphy (2001),91 Ohio St.3d 516, 523, 2001-Ohio-112. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219; State v. Adams (1980), 62 Ohio St.2d 151, 157-58.
 {¶ 57} An indigent criminal defendant has a Sixth Amendment right to competent counsel; however, this constitutional right does not extend to a right to counsel of the defendant's choosing. Thurston v. Maxwell
(1965), 3 Ohio St.2d 92, 93. Likewise, the right to counsel does not include a right to a meaningful or peaceful relationship between counsel and the defendant. State v. Blankenship (1995), 102 Ohio App.3d 534,558, citing Morris v. Slappy (1983), 461 U.S. 1, 13. *Page 24 
 {¶ 58} Instead, an indigent criminal defendant may discharge a court-appointed attorney only "upon a showing of good cause, such as a conflict of interest, a complete break-down in the attorney-client relationship or an irreconcilable conflict which leads to an apparently unjust result." Blankenship, 102 Ohio App.3d at 558; see also State v.White, 3d Dist. No. 9-98-52, 1999-Ohio-847; State v. McCoy, 2nd Dist. No. 2003-CA-27, 2004-Ohio-266.
 {¶ 59} In the case sub judice, a breakdown in communication between Kirk and his counsel occurred, as evidenced by Kirk's protests at the March 2006 scheduling conference, his subsequent letters, and his counsel's May 11, 2006 motion to withdraw. Kirk's protests did not appear to be an attempt to delay the process or to be made in bad faith. However, we cannot find that the trial court's refusal to appoint new counsel was unreasonable, arbitrary, or unconscionable in light of the fact that Kirk's protests stemmed from his erroneous belief that his speedy trial right had been violated and had nothing to do with the merits of the case.[4] Likewise, nothing in the record indicates that Kirk's counsel was unprepared to represent Kirk at his trial or that Kirk was prejudiced in any way by the trial court's refusal to appoint new counsel. Based on these facts, we find that *Page 25 
the trial court did not abuse its discretion by denying either Kirk's motion for new counsel or his counsel's motion to withdraw.
 {¶ 60} Alternatively, Kirk asserts that he received ineffective assistance of counsel because his counsel failed to raise the speedy trial issue.
 {¶ 61} A defendant asserting a claim of ineffective assistance of counsel must establish both that counsel performed unreasonably under the circumstances and that the unreasonable performance prejudiced the defendant. State v. Kole, 92 Ohio St.3d 303, 306, 2001-Ohio-191, citingStrickland v. Washington, (1984), 466 U.S. 668, 687. Ohio licensed attorneys are presumed competent in their representation of a defendant's interests. State v. Hoffman (1988), 129 Ohio App.3d 403,407. Tactical or strategic decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel.State v. Garrett (1991), 76 Ohio App.3d 57, 61, abrogated on other grounds by State v. Delmonico, 11th Dist. No. 2003-A-0022,2005-Ohio-2902.
 {¶ 62} Based on our finding in Kirk's third assignment of error that the trial court did not violate Kirk's speedy trial right, we find that his counsel was not ineffective by failing to raise the speedy trial issue.
 {¶ 63} Accordingly, we overrule Kirk's second assignment of error. *Page 26 
 {¶ 64} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW and PRESTON, JJ., concur.
[1] The State dismissed the theft charge prior to trial.
[2] Although Kirk also filed a letter on April 13, 2006 he did not propose it to be any kind of motion. Instead, Kirk expressed his dissatisfaction with his counsel in the letter and noted that he was stating for the public record that he had dismissed his attorney. However, since the filing of the letter has no impact on our decision regarding Kirk's speedy trial right, we decline to address whether the letter constituted a motion under R.C. 2945.72(E) to disrupt the running of Kirk's speedy trial time.
[3] Additionally, from May 22, 2006, to the June 7 trial, Kirk submitted motions almost daily, all of which would have tolled the running of speedy trial time if his May 12, 2006 motion had not already done so.
[4] However, we do note that the trial court implied that CIUC, rather than the trial court, determined whether to assign counsel to an indigent defendant. The trial court correctly stated that it does not assign particular counsel to a defendant; however, the trial court is ultimately responsible for ordering that counsel be appointed to a defendant, and if warranted, that new counsel be appointed. *Page 1